**DUANE MORRIS LLP**
Sarah A. Gilbert (SBN 312865)
sagilbert@duanemorris.com
750 B Street, Suite 2900
San Diego, California  92101
Telephone:   (619) 744-2200
Facsimile:   (619) 744-2201

**DUANE MORRIS LLP**
Shireen Y. Wetmore (SBN 278501)
sywetmore@duanemorris.com
Nathan K. Norimoto (SBN 334835)
nnorimoto@duanemorris.com
Spear Tower
One Market Place, Suite 2200
San Francisco, California  94105-1127
Telephone:   (415) 957-3000
Facsimile:   (415) 957-3001

Attorneys for Defendant
KELLY SERVICES GLOBAL, LLC

(Additional counsel on following page)

UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YURI FISCHER, an individual, on behalf of himself and on behalf of all other persons similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> KELLY SERVICES GLOBAL, LLC, a Limited Liability Company; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No. **'23CV1197 JLS  JLB** <br><br> **DEFENDANT KELLY SERVICES GLOBAL, LLC'S NOTICE OF REMOVAL OF CIVIL ACTION TO THE UNITED STATES DISTRICT COURT** <br><br> [Removed from San Diego County Superior Court, Case No. 37-2023-00013916-CU-OE-CTL] <br><br> [*Filed concurrently with Civil Case Cover Sheet; Corporate Disclosure; Notice of Party With Financial Interest; and Declaration of Terri Ministrelli*] |

**DUANE MORRIS LLP**
Gerald L. Maatman (*pro hac vice motion to follow*)
gmaatman@duanemorris.com
Jennifer A. Riley (*pro hac vice motion to follow*)
jariley@duanemorris.com
Tyler Z. Zmick (*pro hac vice motion to follow*)
tzzmick@duanemorris.com
190 S. LaSalle Street, Suite 3700
Chicago, Illinois 60603
Telephone:     (312) 499-6700
Facsimile:     (312) 499-6701

1

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant KELLY SERVICES GLOBAL, LLC ("Kelly" or "Defendant") hereby removes the above-captioned case from the Superior Court of the State of California, County of San Diego, to the United States District Court for the Southern District of California, asserting original jurisdiction under 28 U.S.C. §§ 1332(d)(2) (the Class Action Fairness Act of 2005 ("CAFA")), and removal jurisdiction under 28 U.S.C. §§ 1441(a), 1446, and 1453.

**I.    BACKGROUND**

1.    On April 4, 2023, Plaintiff Yuri Fischer ("Plaintiff") filed a Class Action Complaint ("Complaint") in the Superior Court of the State of California, County of San Diego, entitled *Yuri Fischer v. Kelly Services Global, LLC, et al.*, Case Number 37-2023-00013916-CU-OE-CTL.  Plaintiff asserts a single cause of action against Kelly for an alleged violation of the Unfair Competition Law (the "UCL"), California Business and Professions Code section 17200, *et seq.*  (*See* Declaration of Terri Ministrelli in Support of Kelly's Notice of Removal ("Ministrelli Decl.") ¶ 5, Ex. A, "Compl." ¶¶ 45-56.)

2.    Plaintiff premises his UCL claim on Kelly's alleged violations of the California Labor Code and applicable Industrial Welfare Commission Wage Orders.  He claims that Kelly violated the Labor Code by failing to: (i) pay Plaintiff premium wages for missed or shortened meal and/or rest periods; (ii) pay Plaintiff wages for all hours worked; (iii) pay overtime and double time wages at the correct rate by "failing to include nondiscretionary incentive compensation into [his] regular rates of pay for purposes of computing the proper overtime pay"; (iv) reimburse Plaintiff for all necessary business expenditures; (v) timely pay wages during employment; (vi) properly deduct wages from paychecks; (vii) pay accrued vacation time at termination; (viii) accurately calculate and pay sick leave; (ix) furnish accurate wage statements; and (x) provide suitable seating during the workday. (Compl. ¶¶ 14, 24, 45, 47.)

2

3.      In the Complaint, Plaintiff seeks to certify a putative class (the "UCL Class") consisting of "[a]ll individuals who are or previously were employed by [Kelly] in California and classified as non-exempt employees . . . at any time during the period beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court."  (*Id.* ¶ 32.)

4.      On May 30, 2023, Kelly's registered agent for service of process was served with copies of the Service of Process Transmittal Summary from CT Corporation, Process Server Delivery Details form, Summons, Complaint, Civil Case Cover Sheet, Notice of Case Assignment and Case Management Conference, and Alternative Dispute Resolution (ADR) Information forms.  (Ministrelli Decl. ¶ 5.)  A true and correct copy of this service packet is attached as **Exhibit A** to the Declaration of Terri Ministrelli filed in support of this Notice of Removal.  (*Id.*)

5.      On June 2, 2023, Plaintiff filed a "Proof of Service of Summons" in the Superior Court of the State of California, County of San Diego.  Following Plaintiff's filing of a Proof of Services of Summons, the entire San Diego Superior Court docket was downloaded from www.sdcourt.ca.gov, and true and correct copies of the filings are attached hereto as **Exhibits B to F** to this Notice of Removal.

6.      The San Diego County Superior Court's electronic docket indicates that the Superior Court scheduled a Case Management Conference for September 29, 2023 at 9:15 a.m. in Department C-72, located at 110 Union Street, San Diego, California 92101. Other than the September 29, 2023 Case Management Conference, the electronic docket for the San Diego County Superior Court does not indicate that any other proceedings are scheduled in the Superior Court.

## II.    TIMELINESS OF REMOVAL

7.      This Notice of Removal is timely filed as it is filed less than one year from the date this action was commenced and within thirty (30) days of service upon Kelly. *See* 28 U.S.C. § 1446(b) & (c)(1); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,

526 U.S. 344, 353-56 (1999) (thirty-day removal period begins when defendant is formally served).

## III.   CLASS ACTION FAIRNESS ACT REMOVAL

8.     This Court has original subject-matter jurisdiction over this action under CAFA, codified in relevant part at 28 U.S.C. § 1332(d)(2), as: (1) the action involves 100 or more putative class members; (2) at least one class member is a citizen of a state different from that of at least one defendant; and (3) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.  28 U.S.C. §§ 1332(d)(2), (d)(5), & (d)(6).

### A.     The Putative Class Exceeds 100

9.     The number of putative class members in this action is greater than 100.  28 U.S.C. § 1332(d)(5)(B).  Indeed, Plaintiff's alleged employers, Kelly, has employed approximately 33,055 hourly non-exempt employees in the State of California during the relevant time period.  (*See* Ministrelli Decl. ¶ 8.)

### B.     Plaintiff And Kelly Are Minimally Diverse

10.     CAFA requires only minimal diversity for purposes of establishing federal jurisdiction.  That is, at least one putative class member must be a citizen of a state different from any named defendant.  *See* 28 U.S.C. § 1332(d)(2)(A).  In this case, Plaintiff is a citizen of a state (California) that is different from the state of citizenship of Kelly (Michigan).

#### 1.     Plaintiff Is A Citizen Of California

11.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled.  *See Kantor v. Wellesly Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the place where he or she resides with the intent to remain indefinitely.  *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return.").  Citizenship is determined by the individual's domicile at the time the lawsuit is filed.  *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986));

4

*see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (holding that, where complaint alleges plaintiff resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes").

12.    Plaintiff alleges that he "worked in [San Diego County] for" Kelly.  (Ex. A, Compl. ¶ 31.)  In addition, based on Company records, Plaintiff was a resident of California throughout the period of his employment with Kelly.  (Ministrelli Decl. ¶ 6.) For instance, when Plaintiff began his employment with Kelly, Plaintiff provided Kelly with a home address in Ramona, California.  (*Id*.)  Additionally, the mailing address reflected on Plaintiff's paystubs throughout his employment with Kelly is in Ramona, California.  (*Id*.)  Accordingly, on information and belief following a reasonable investigation, Plaintiff is a citizen of California.

### 2.    Defendant Kelly Services Global, LLC Is Not A Citizen Of California

13.    Plaintiff names Kelly Services Global, LLC as a defendant.  As a general rule, a limited liability company is a citizen of every state of which its members are citizens.  *See Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) ("LLCs resemble both partnerships and corporations.  Notwithstanding LLCs' corporate traits, however, every circuit that has addressed the question treats them like partnerships for the purposes of diversity jurisdiction. . . . [A]n LLC is a citizen of every state of which its owners/members are citizens.").

14.    For purposes of CAFA's minimal diversity requirement, however, an "unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10); *see Davis v. HSBC Bank Nev., N.A.*, 557 F.3d 1026, 1032 n.13 (9th Cir. 2009) ("For qualifying class actions such as this one, CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes.").

15.    A corporation's principal place of business for diversity purposes is normally "the place where the corporation maintains its headquarters." *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1193 (2010).  In *Hertz*, the U.S. Supreme Court held that the "principal place of business" of a corporation is best interpreted as a corporation's "nerve center," which "ordinarily equates . . . with a corporation's headquarters." *Id.*  The Court explained that "in practice [the nerve center] should normally be the place where the corporation maintains its headquarters – provided that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Id.* at 1192-93; *see also id.* at 1195 (distinguishing situation where alleged "nerve center" is "nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat").

16.    For removal purposes, citizenship is measured both when the action is filed and when it is removed. *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1131 (9th Cir. 2002); *Kanter*, 265 F.3d at 857.

17.    At all times since Plaintiff commenced this lawsuit, Kelly Services Global, LLC has been a limited liability company formed under the laws of the State of Michigan with its principal place of business in the State of Michigan.  (Ministrelli Decl. ¶¶ 3-4.) Kelly Services Global, LLC has maintained its corporate headquarters in Troy, Michigan. (*Id.* ¶ 4.)  Its corporate executives, including its senior leadership team, have been and continue to be located in Michigan, have maintained and continue to maintain their offices in Michigan, and have performed and continue to perform their primary duties and job functions in Michigan.  (*Id.*)  Because Kelly Services Global, LLC was formed under the laws of the State of Michigan and maintains its principal place of business in the State of Michigan, it is not a citizen of the State of California.

18.    Accordingly, CAFA's diversity requirement is satisfied because at least one class member—here, Plaintiff—and Defendant Kelly Services Global, LLC are citizens of different states.

### 3.    Doe Defendants Have No Bearing On Diversity Jurisdiction

19.    Pursuant to 28 U.S.C. §§ 1441(a), the residence of fictitious and unknown defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. § 1332.  *See, e.g.*, *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are not required to join in a removal petition); *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971 (9th Cir. 2002) ("[C]itizenship of fictitious defendants is disregarded for removal purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a named defendant.").  Thus, the existence of Doe Defendants 1 through 50 does not deprive this Court of jurisdiction.  *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 679-80 n.4 (9th Cir. 2006).

### C.    The Amount In Controversy Exceeds The Statutory Minimum

20.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000.  *See* 28 U.S.C. § 1332(d)(6).  Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)."  Sen. Jud. Comm. Rep., S. REP. 109-14, at 42.  Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction.  S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions.  Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

21.    To establish that the amount in controversy exceeds the jurisdictional amount, the defendant must only make a plausible claim that the amount in controversy

exceeds that amount. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014). Where, as here, Plaintiff does not plead a specific amount of damages, a defendant need only "plausibly show that it is reasonably possible that the potential liability exceed $5 million." *Greene v. Harley-Davidson*, 965 F.3d 767, 772 (9th Cir. 2020). As the Ninth Circuit has explained, "the amount in controversy is the 'amount at stake in the underlying litigation,'" which "does not mean likely or probable liability; rather, it refers to possible liability." *Id.* (*quoting Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016) (emphasis omitted)).

22.    For purposes of determining whether the amount in controversy exceeds $5,000,000, a plaintiff's conclusory allegation that is intended to ***limit*** the jurisdictional amount "simply does not control or end the amount in controversy analysis," and the Senate Judiciary Committee specifically acknowledged this issue by identifying "this kind of facially limiting provision as one of the problems of 'misuse' plaguing class actions." *Yeroushalmi v. Blockbuster, Inc.*, No. CV 05-225-AHM(RCX), 2005 WL 2083008, at *2 (C.D. Cal. July 11, 2005) (quoting S. Rep. 109-14, at *11.); *see also Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 977 (9th Cir. 2013) (defendant can still establish the jurisdictional amount under the "preponderance of the evidence" standard where complaint alleges that amount in controversy is less than $5 million); *Rodriguez v. Swissport USA, Inc.*, No. CV-15-3951-GW (PLAX), 2015 WL 4977187, at *1 (C.D. Cal. Aug. 20, 2015) ( "Plaintiff cannot avoid CAFA jurisdiction by alleging that the total amount in controversy is less than $5,000,000.") (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592-96 (2013)); *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1206, n.4 (E.D. Cal. 2008) (a plaintiff "cannot avoid satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less than the statutory maximum," and the "critical inquiry is the amount placed in controversy by the allegations in plaintiff's complaint"). Here, Plaintiff's conclusory allegation that the amount in controversy is less than five million dollars (Compl. ¶ 4) holds no weight in

the determination that the amount in controversy exceeds the jurisdictional minimum under CAFA.

23.    While Kelly denies any liability as to Plaintiff's claims, the amount in controversy as alleged in the Complaint exceeds $5,000,000, exclusive of interest and costs.  Kelly bases all calculations supporting the amount in controversy on the Complaint's allegations (along with other documents identified herein), assuming, without any admission, the truth of the allegations (which Kelly disputes).  Likewise, Kelly bases these calculations on the putative class alleged in the Complaint, and in no way indicates or concedes that class treatment is appropriate in this case, that Plaintiff has standing to represent any class, or that the class proposed would meet the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  Kelly expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, Plaintiff's class definition, Plaintiff's ability to meet the requirements of Rule 23, and the calculation of damages or any other monetary relief in all respects.

24.    Because Plaintiff has not alleged a particular dollar figure regarding the relief sought, reasonable estimates of the alleged amount in controversy are appropriate. *See Ibarra v. Manheim Inv.'s, Inc.*, 775 F.3d 1193, 1198 (9th Cir. 2015).  Moreover, where a plaintiff alleges a "uniform policy and systematic scheme of wage abuse," without including "any modifying language to suggest less than uniform violations," courts have found that the amount in controversy can be satisfied by assuming a 100% violation rate.  *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. 2017) (distinguishing *Ibarra*); *Unutoa v. Interstate Hotels & Resorts, Inc.*, 2015 WL 898512, at *2-3 (C.D. Cal. 2015) ("Removing defendants will inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove Plaintiff's case for him by proving the actual rates of violation.").

25.    As the U.S. Supreme Court has explained, a defendant's amount-in-controversy allegations on removal are entitled to the same weight given those alleged by a plaintiff in its pleadings. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 88.  As a

9

result, the effect of any affirmative defenses potentially reducing the amount in controversy cannot be considered when determining federal jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010); *Scherer v. Equitable Life Assur. Soc.*, 347 F.3d 394, 397-398 (2d Cir. 2003) (holding that affirmative defenses may not be used to "whittle down the amount in controversy"); *Lara v. Trimac Transp. Servs. (Western), Inc.*, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the jurisdictional minimum.").

26.    Here, Plaintiff asserts a single count based on Kelly's alleged violation of the UCL.  "Plaintiffs who prevail under the UCL are generally limited to injunctive relief and restitution.  Plaintiffs may not receive damages . . . or attorneys fees." *Elec. Indus. Serv. Bureau, Inc. v. Philadelphia Indem. Co.*, 2018 WL 7286502, at *5 (N.D. Cal. July 11, 2018) (internal quotation marks and citation omitted).  In this case, Plaintiff theoretically can recover monetary relief for at least eight Labor Code and IWC Wage Order violations alleged in the Complaint, including Plaintiff potentially recovering restitutionary relief for: (i) premiums owed due to Kelly's alleged failure to provide Plaintiff with meal and/or rest periods; (ii) unpaid wages due to Kelly's alleged failure to pay Plaintiff minimum wage for all hours worked; (iii) unpaid wages due to Kelly's alleged failure to pay overtime and double time wages at the correct regular rate due to "failing to include nondiscretionary incentive compensation into [his] regular rates of pay for purposes of computing the proper overtime pay"; (iv) failing to reimburse Plaintiff for all necessary business expenditures; (v) taking impermissible deductions from paychecks; (vi) failing to pay accrued vacation time at termination; and (vii) failing to accurately calculate and pay Plaintiff for unpaid sick leave. (*See, e.g.*, Compl. ¶¶ 17, 47.)

**1.    Minimum Wage Violations and Overtime Violations Claims**

27.    Plaintiff seeks payment for unpaid wages and alleged overtime violations as a result of Kelly's purported "established company policy and procedure" of "rounding"

and requiring Plaintiff and putative class members "to perform work off the clock" by "requir[ing] these employees to submit to mandatory temperature checks and symptom questionnaires for COVID-19 screening prior to clocking into [Kelly's] timekeeping system for the workday." (*Id.* ¶¶ 8, 13; *see also id.* ¶ 28 (alleging Kelly "engag[ed] in a company-wide policy and procedure which failed to accurately calculate and record the correct overtime rate for the overtime worked by" Plaintiff and putative class members).) Further, Plaintiff alleges Kelly failed to accurately calculate the regular rate of pay for overtime payments by failing to include "incentive compensation [offered] when the employees met the various performance goals set by" Kelly. (*Id.* ¶ 10.)

28.    California Labor Code section 1194 permits "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Such amounts "are recoverable as restitution under the UCL," despite damages being unavailable under the statute. *See, e.g.*, *Sandoval v. Ali*, 34 F. Supp. 3d 1031, 1044 (N.D. Cal. 2014).

29.    While the statute of limitations for recovery for minimum wage and overtime violations under Labor Code section 1194 is three years, Cal. Civ. Proc. Code § 338, in this case Plaintiff alleges a claim for pay as part of his UCL claim. (*See* Compl. ¶¶ 28, 45, 46.) According to the allegations of his Complaint, the four-year statute of limitations applies for purposes of removal. Cal. Bus. & Prof. Code § 17208. Accordingly, the proposed class period for Plaintiff's minimum wage and overtime claims is from **April 4, 2019 to present**.[1]

30.    The Complaint is silent as to the amount of alleged unpaid wages and overtime, thereby precluding precise estimates of the amount in controversy. (*See*

---

[1] Kelly acknowledges that the Complaint asserts only a single count under the UCL and that Plaintiff does not formally assert distinct "claims" based on alleged wage-and-hour violations; rather, such alleged violations comprise part of his UCL claim. Kelly uses the term "claim" in this removal notice to refer to each alleged violation of the California Labor Code set forth in the Complaint.

*generally* Compl.); *see also Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *4 (E.D. Cal. May 1, 2007).  Plaintiff does, however, allege that Kelly failed to pay all wages and overtime owed in accordance with Kelly's "established company policy and procedure" that imposes a "uniform practice" of rounding time and that Kelly "regularly failed to pay" Plaintiff and the putative class members "their correct wages." (Compl. ¶¶ 8, 20.)

31.    During the relevant time period identified in the Complaint, there were approximately 33,055 current and former non-exempt hourly employees who are or were employed by Kelly in California.  (Ministrelli Decl. ¶ 8.)  These 33,055 current and former employees worked a total of approximately 673,579 workweeks.  (*Id.*)  The average hourly rate of pay for these individuals from April 15, 2019 to June 20, 2023, is approximately $22.38, and the average hourly overtime rate of pay for these individuals from April 15, 2019 to June 20, 2023, is approximately $33.57.  (*Id.* ¶ 9.)

32.    Although Kelly denies that Plaintiff (or any putative class member) is entitled to any unpaid wages, assuming 60 minutes of unpaid wages (30 of those minutes calculated at the average hourly rate and the other 30 minutes calculated at the average overtime rate) per week for only 40% of the 33,055 putative class members, the amount in controversy would be approximately **$7,537,349.01** [(673,579 Total Work Weeks * 0.5 hours * $22.38 Average Hourly Rate) + (673,579 Total Work Weeks * 0.5 hours * $33.57 Average Hourly Overtime Rate) * 40% = $7,537,349.01].

33.    **Assuming 50%** of the putative class were underpaid, the amount in controversy would be approximately **$9,421,686.26** [(673,579 Total Work Weeks * 0.5 hours * $22.38 Average Hourly Rate) + (673,579 Total Work Weeks * 0.5 hours * $33.57 Average Hourly Overtime Rate) * 50% = $9,421,686.25].

34.    **Assuming 60%** of the putative class were underpaid, the amount in controversy would be approximately **$11,306,023.52** [(673,579 Total Work Weeks * 0.5 hours * $22.38 Average Hourly Rate) + (673,579 Total Work Weeks * 0.5 hours * $33.57 Average Hourly Overtime Rate) * 60% = $11,306,023.50].

35.    Accordingly, the amount in controversy regarding Plaintiff's minimum wage and overtime claims is between approximately **$7,537,349.01** and **$11,306,023.50**.

36.    Although Kelly denies Plaintiff's allegations, these are conservative estimates for purposes of calculating the amount in controversy under CAFA removal. Indeed, the Ninth Circuit and numerous district courts have held that an estimate of at least 30 minutes per class member per week is appropriate in light of Plaintiff's allegations. *See, e.g.*, *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019) (holding that "Marriott's assumptions are plausible" where it assumed "30 minutes of unpaid overtime per week"); *Gant v. ALDI, Inc.*, 2020 WL 1329909, at *5 (C.D. Cal. March 20, 2020) ("For the unpaid overtime claim, Defendants used a violation rate of one hour of unpaid overtime per week. This assumption is reasonable in light of the Complaint, whose allegations lack specificity."); *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *5 (C.D. Cal. Feb. 19, 2019) (finding estimate of one hour per class member per week appropriate where plaintiff alleged "a pattern and practice" of overtime violations); *Stanley v. Distribution Alternatives, Inc.*, 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (denying motion to remand where, "[f]or the at-controversy overtime wages, [defendant] assume[d] that each of the class members worked two hours of overtime each week during the class period"); *Patel v. Nike Retail Servs., Inc.*, 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) (finding appropriate assumption that each class member is owed one hour of overtime compensation per week where complaint alleged overtime violations occurred "regularly"); *Oda v. Gucci Am. Inc.*, 2015 WL 93335 at *4 (C.D. Cal. Jan. 7, 2015) (finding reasonable an assumed violation rate of one hour of overtime per week where plaintiffs asserted the defendant "sometimes" failed to pay overtime); *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding reasonable defendant's estimate of one hour of unpaid overtime per week for each class member where the complaint alleged "consistent" unpaid overtime work).

### 2.   Unpaid Meal Premiums Claim

37.     Plaintiff alleges that he and the putative class members "were from time to time unable to take thirty (30) minute off duty meal breaks and were not fully relieved of duty for their meal periods." (Compl. ¶ 11.)  Further, "from time to time" Plaintiff and the putative class members did not receive a second meal break where they worked ten (10) hour shifts.  (*Id.* ¶ 11.)  Plaintiff also accuses Kelly of "rounding meal period times to avoid paying" premiums to Plaintiff and the putative class members and requiring him and the putative class members to "work while clocked out during what is supposed to be [their] off-duty meal break[s]." (*Id.* ¶¶ 10, 11.)  As such, Plaintiff requests "one (1) hour of pay for each workday in which an off-duty meal period was not timely provided for each five (5) hours of work, and/or one (1) hour of pay for each workday in which a second off-duty meal period was not timely provided for each ten (10) hours of work." (*Id.* ¶ 50.)

38.     Based on these alleged violations of the Labor Code, Plaintiff seeks premium wages for the allegedly missed meal breaks.  (*See* Compl. ¶ 9.)  Such premiums are considered restitutionary and therefore can be recovered in a UCL action.  *See, e.g.*, *Dawson v. Hitco Carbon Composites, Inc.*, 2017 WL 7806561, at *8-9 (C.D. Cal. Aug. 3, 2017) ("[A]n employee's interest in the meal period premium is not an expectancy, but an interest which vests as soon as the meal period is missed.  If Plaintiff was denied meal and rest periods as he alleges, he has a vested ownership interest in the corresponding premiums."); *Lopez v. United Parcel Service, Inc.*, 2010 WL 728205, at *10 (N.D. Cal. Mar. 1, 2010) (meal and rest break premiums are restitutionary because they are akin to payment of overtime wages to an employee and thus recoverable under the UCL).

39.     California law provides that "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes."  Cal. Lab. Code § 512.  Section 512 further provides that "[a]n employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not

less than 30 minutes." California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely meal periods. An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day. *Lyon v. W.W. Grainger, Inc.*, 2010 WL 1753194, *4 (N.D. Cal. Apr. 29, 2010) (noting California Labor Code § 226.7 provides recovery for one meal break violation per work day and one rest break violation per work day).

40.    While the statute of limitations for recovery for meal period premium pay under California Labor Code § 226.7 is three years, *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1099 (2007) ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to four years when a plaintiff pursues an action for restitution under the UCL. *See Falk v. Children's Hospital Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("[A]ctions for restitution and under Business and Professions Code section 17200 are subject to a four-year statute of limitation."). Accordingly, the proposed class period for the unpaid meal period premium claim is from **April 4, 2019 to present**.

41.    Kelly pays its non-exempt employees every week. (Ministrelli Decl. ¶ 10.) Accordingly, there are 52 pay periods per year. During the proposed class period, the putative class members worked a total of approximately 673,579 workweeks – *i.e.*, approximately 673,579 pay periods. (*Id.*)

42.    Based on the allegations in the Complaint, assuming each putative class member is entitled to one hour of premium pay for every two pay periods for the alleged non-provision of meal periods, the amount in controversy on this claim would equal no less than **$7,537,349.01** ($22.38/hour x 336,789.5 weeks).

43.    Kelly's estimate is conservative. Kelly assumes only one meal period violation for each two-week period, which is arguably less frequent than Plaintiff's allegation that Kelly "from time to time" and "***regularly*** failed to pay" Plaintiff and the putative class "their correct wages" during the applicable class period. (Compl. ¶¶ 11, 20

(emphasis added).)  In other words, if an employee worked 10 days during a two-week period, Kelly has conservatively calculated only a single meal period violation during that period.

### 3.    Unpaid Rest Period Premiums Claim

44.    According to the Complaint, Kelly failed to provide Plaintiff and the putative class all "legally required" rest breaks and failed to provide premium wages for missed and/or untimely rest breaks.  (*Id.* ¶ 29.)  Plaintiff further alleges that Kelly failed to accurately calculate premiums paid for missed rest breaks by failing to include "incentive compensation" in the regular rate of pay calculation.  (*Id.* ¶ 10.)  Plaintiff alleges that he and the putative class members were "from time to time" required to work in excess of four (4) hours without being provided their first, second, and/or third rest break during their shift.  (*Id.* ¶ 12.)  Moreover, Plaintiff alleges that Kelly "restricted" him and putative class members from taking "unconstrained walks" and from leaving the premises during their rest breaks.  (*Id.*) Thus, Plaintiff "demands . . . one (1) hour of pay for each workday in which an off duty paid rest period was not timely provided as required by law."  (*Id.* ¶ 51.)

45.    Under California law, "[e]very employer shall authorize and permit all employees to take rest periods, which . . . shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1028 (2012).  California Labor Code § 226.7 requires employers to pay an extra hour's pay to employees who are not provided full or timely rest periods.  An employee is entitled to an additional hour's wages per day, for both a rest and meal period violation each day.  *Lyon*, 2010 WL 1753194 at *4.

46.    While the statute of limitations for recovery for rest period premium pay under California Labor Code § 226.7 is three years, *Murphy*, 40 Cal. 4th at 1099 ("[T]he remedy provided in Labor Code section 226.7 constitutes a wage or premium pay and is governed by a three-year statute of limitations."), the statute of limitations is extended to

four years when a plaintiff pursues an action for restitution under the UCL.  *See Falk*, 237 Cal. App. 4th at 1462, n.12.  Accordingly, the proposed class period for the unpaid rest period claim is from **April 4, 2019 to present**.

47.   Based on the allegations of the Complaint, assuming each putative class member is entitled to one hour of premium pay per two-week period for the alleged nonprovision of rest periods, the amount in controversy on this claim would equal no less than **$7,537,349.01** ($22.38/hour x 336,789.5 weeks).

48.   Kelly's estimate is conservative.  Kelly assumes only one rest period violation for each two-week period, which is arguably less frequent than Plaintiff's allegation that he and putative class members were not provided with legally-compliant rest periods due to Kelly "from time to time" and "***regularly*** fail[ing] to pay" Plaintiff and the putative class "their correct wages" during the applicable class period.  (Compl. ¶¶ 12, 20 (emphasis added).)  In other words, if an employee worked 10 days during a two-week period, Kelly has conservatively calculated only a single rest period violation during that period.

### 4.   Unreimbursed Business Expense Claim

49.   Plaintiff claims he and putative class members were "required" by Kelly "to use their own personal cellular phones as a result of and in furtherance of their job duties as employees for" Kelly without being reimbursed for their expenditure.  (*Id.* ¶ 23.)  Plaintiff seeks to recover from Kelly reimbursement for these expenditures incurred by himself and the putative class members.  (*Id.* ¶¶ 22, 23, 47.)

50.   Under California law, an employer has a statutory obligation to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful."  Cal. Labor Code § 2802(a).  Like amounts reflecting premiums for allegedly missed meal and rest breaks, plaintiffs may recover amounts for unpaid necessary business expenses under the UCL.  *See, e.g.*,

*Kooiman v. Siwell, Inc.*, 2022 WL 2287310, at *3 (C.D. Cal. June 23, 2022) (noting unreimbursed business expenses are considered restitution); *Harris*, 2016 WL 4073327, at *10 ("Plaintiff's UCL cause of action survives insofar as it relies on § 2802 violations as the predicate."); *Brandon v. Nat'l R.R. Passenger Corp. Amtrak*, 2013 WL 800265, *4 (C.D. Cal. Mar. 1, 2013) ("Plaintiff seeks restitution for unpaid meal and rest periods and unreimbursed business expenses. These expenses are restitutionary and therefore recoverable under the UCL."); *Ordonez v. Radio Shack*, 2011 WL 499279, at *6 (C.D. Cal. Feb. 7, 2011) ("The Court . . . concludes that the UCL claim may be maintained to the extent it is predicated on plaintiff's claim under Sections 221 and 2802."); *Woo v. Home Loan Group, L.P.*, 2007 WL 6624925, *4 (S.D. Cal. July 27, 2007) ("[T]he Court denies [defendants'] motion to dismiss Plaintiff's section 17200 claim based on the argument that unreimbursed business related expenses and improper deductions are unavailable as restitution . . . .").

51.    While the statute of limitations for recovery for unpaid business expenses under California Labor Code § 2802 pay is three years, Cal. Civ. Proc. Code § 338, the limitations period is extended to four years when a plaintiff seeks restitution for the Labor Code violations. *Falk*, 237 Cal. App. 4th at 1462, n.12. Accordingly, the proposed class period for the unreimbursed business expenses claim is from **April 4, 2019 to present**.

52.    During the period of April 15, 2019 to June 20, 2023, there were approximately 33,055 potential class members, who worked a total of approximately 673,579 workweeks. (Ministrelli Decl. ¶ 8.) That number of weeks worked equates to approximately 155,441.31 total months worked (673,579 weeks worked x (12 months per year/52 weeks per year)).

53.    Assuming each putative class member during the limitations period may recover cell phone expenses in the amount of $3 per month, the amount in controversy for the unpaid business expenses would equal no less than **$466,323.93** ($3/month x 155,441.31 months).

54.    Kelly's estimate is conservative.  For purposes of showing the amount in controversy for alleged failure to reimburse cell phone expenses, there is a wide variety of cell phone plans available, with different promotions and from different providers. According to the U.S. Bureau of Labor Statistics, the average monthly cell phone services charge for the time period of April 2019 to May 2023 is approximately $47.38 per month. *See* U.S. Bureau of Labor Statistics, Databases, *Tables & Calculators by Subject: Wireless telephone services in U.S. city average, all urban consumers, not seasonally adjusted*, *available at* https://data.bls.gov/timeseries/CUUR0000SEED03?output_view=data (last accessed June 23, 2023).  Assuming employees use their cell phones for business purposes for only approximately 6.4% of the time during each month, their expenses would be approximately $3 per month.

### 5.    Approximate Aggregate Amount In Controversy

55.    Although Kelly denies Plaintiff's allegations that he or the putative class are entitled to any relief for the above-mentioned claims, based on the forgoing calculations, the aggregate amount in controversy for the putative class for the asserted claims, exclusive of attorneys' fees, is between approximately **$23,078,370.95** to **$26,847,045.46**, calculated as follows:

| | |
|---|---|
| **$7,537,349.01 – $11,306,023.52** | Minimum Wage and Overtime Claims (40% to 60% violation rate) |
| **$7,537,349.01** | Unpaid Meal Period Premiums Claim |
| **$7,537,349.01** | Unpaid Rest Break Premiums Claim |
| **$466,323.92** | Unreimbursed Business Expense Claim |
| **$23,078,370.95 – $26,847,045.46** | **Total** |

56.    The figures above do not take into account the monetary cost associated with Plaintiff's requested injunctive relief.  (*See* Compl. ¶¶ 5, 46, 47, 55.)

57.     As set forth above, the amount Plaintiff has placed in controversy easily satisfies CAFA's $5,000,000 requirement.  Indeed, using a conservative estimate, the total amount in controversy is at least between **$23,078,370.95** to **$26,847,045.46**.

## IV.     VENUE

58.     Venue lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. sections 1441, 1446(a), and 84(d).  This action originally was brought in the San Diego County Superior Court of the State of California, which is located within the Southern District of California.  28 U.S.C. § 84(d).  Therefore, it is properly removed to this District.

## V.     NOTICE OF REMOVAL TO STATE COURT AND TO PLAINTIFF

59.     This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Diego County Superior Court of the State of California, as required under 28 U.S.C. § 1446(d).

## VI.     PRAYER FOR REMOVAL

60.     **WHEREFORE**, Defendant Kelly Services Global, LLC prays that this civil action be removed from the San Diego County Superior Court of the State of California, to the United States District Court for the Southern District of California.

**DATED: June 28, 2023**                    Respectfully submitted,

DUANE MORRIS LLP

By: *s/ Nathan K. Norimoto*
Gerald L. Maatman, Jr.
Jennifer A. Riley
Shireen Y. Wetmore
Sarah A. Gilbert
Tyler Zmick
Nathan K. Norimoto
Attorneys for Defendant
KELLY SERVICES GLOBAL, LLC